194 So. 667

**F. W. WOOLWORTH CO. v. NEY.**

6 Div. 639.

Supreme Court of Alabama.

March 14, 1940.

Kingman C. Shelburne and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

Morel Montgomery, of Birmingham, for appellee.

234

KNIGHT, Justice.

Suit for damages for personal injuries alleged to have been sustained by plaintiff while a customer in a store owned and operated by the defendant in the City of Birmingham, Alabama. From a judgment for plaintiff, the defendant, Woolworth Company, brings this appeal.

It is here argued by appellant that the trial court committed error in refusing to give the jury the affirmative charge in its behalf, which it had duly requested in writing. Other alleged errors are argued, but in the view we take of the case, it is unnecessary to consider the same.

In determining the question whether the court committed error in refusing the general charge requested by the defendant, it becomes necessary for us to consider all the evidence in the case, and that, too, in its most favorable aspect for the plaintiff.

The evidence tended to show that the defendant owned and operated a large store in the City of Birmingham, and employed many clerks, and other employees; that on or about October 1, 1938, the plaintiff was a customer in said store, that after purchasing a pair of socks at the sock counter, he desired to go to the handkerchief counter, and he then turned around and started away from the sock counter, and after taking the second or third step, he stepped on a "banana peel," which caused him to slip and fall to the floor, and that from this fall he received the injuries catalogued in his complaint. As to the cause of his slipping, and fall upon the floor, we here quote the language of the plaintiff, testifying for himself: "As to noticing anything I stepped on which caused me to fall, I found a banana peel, I pulled it off my foot. It was crushed to a pulp, and lodged right under my left heel, right under here (indicating); and I pulled it off my heel,

that is, a colored fellow took his finger and pulled it away from my foot. That peel was black, dark—real dark. I wouldn't say direct black but real dark brown. I wouldn't think it had any yellow spots on it, but real dark brown. That banana peeling appeared to be dirty. When my foot came in contact with that substance it did make a mark on the floor. When I fell—I have the coat, and on the back there is a place about that large on it (indicating); it won't come out, it is still on my coat now after this time. * * * I tell the jury there were marks going two different ways from the position where I fell. I fell with my feet towards the south, and there were marks going, one to the west and one to the southwest. I would say the covering on the floor was linoleum; the color was dark, I would not specify the exact color, but it was dark. I did not see the banana peel, or that condition at any time before I fell."

There was testimony tending to show that the store was well lighted at the time; that the janitor had swept the floors of the store that morning, and again in the afternoon before the accident happened. The accident occurred around five p. m., some two hours after the second sweeping. The accident occurred between the hosiery counter and the toy counter. There is a lunch counter near the rear of the store, some distance from the place where the plaintiff fell. At this lunch counter, the defendant sells lunches, ice cream, "soda drinks," and "banana splits." The diagram of the interior of the store shows that there was an aisle and another counter between this lunch counter and the place where the plaintiff slipped and fell.

There was no testimony tending to show that any of the defendant's servants or employees threw or dropped the banana peel on the floor, or that any of the defendant's employees or servants knew of its presence on the floor prior to the accident; nor was there any testimony tending to show by whom the peel was dropped on the floor, nor how long it had been there. There was no dispute in evidence that the floor of the store had been swept by the janitor twice during the day of the accident, and before it occurred.

There is no question but that one engaged in the operation of a general mercantile store, and selling merchandise

therein to the public is under a duty to his customers—invitees—and that duty is to exercise, what is termed, ordinary or reasonable care to keep his premises in a reasonably safe condition, and this includes aisles, passageway, floors and walks. He is no insurer of the safety of his customers, but he must observe reasonable care to see that his premises are reasonably safe for those who come into or upon his premises to make purchases, or for other lawful purposes. This seems to be the extent of the duty enjoined upon him, and which he must observe, if he would escape liability to those who may be injured while rightfully upon his premises. Ensley Holding Co. v. Kelley, 229 Ala. 650, 158 So. 896; Farrow v. Thompson Co., 18 La.App. 404, 135 So. 80, 137 So. 604; Graham v. Woolworth Company, Tex.Civ. App., 277 S.W. 223; Goodman v. Theater Parking Co., Inc., 1938, 286 Mich. 80, 281 N.W. 545; Powell v. Feibleman & Co., La. App.1939, 187 So. 130.

 It seems to be generally held that the doctrine of res ipsa loquitur does not apply to cases like the present, where the obligation of the store-keeper to his customers is to use ordinary care to keep the aisles, passage-ways, floors and walks in a reasonable safe condition. Powell v. Feibleman & Co., supra. No presumption of negligence arises from the mere fact of injury to a customer. Upon the plaintiff rests primarily the burden of showing that the injury was proximately caused by the negligence of the store-keeper, or one of its servants or employees. Actual or constructive notice of the presence of the offending instrumentality must be proven before the proprietor can be held responsible for the injury. This seems to be a well nigh universal holding of the courts in the several states of the American Union.

The rule of liability is thus stated in Corpus Juris, Vol. 45, p. 837, § 245: "In order to impose liability for injury to an invitee by reason of the dangerous condition of the premises, the condition must have been known to the owner, or occupant, or have existed for such time that it was the duty of the owner or occupant to know it."

In the Restatement of the Law of Torts, under the title "Special Liability of Possessors of Lands to Business Visitors", under Section 343, the following is the stated rule: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which if known to him, he should realize as involving an unreasonable risk to them * *."

 In the instant case there is absolutely no evidence tending in the slightest degree to show when or how the banana peel came to be on the floor; no evidence to show that any of the servants or employees either dropped it on the floor, or knew that it was there. No evidence which tended in the remotest way to show that this offending instrumentality had been on the floor for such length of time as to charge this defendant, or its servants or employees with knowledge of its presence. For ought appearing to the contrary the banana peel may have been dropped upon the floor only a few minutes or seconds before the accident by some other customer.

The burden was upon the plaintiff to show negligence on the part of the defendant, its servants or employees in permitting this peel to be and to remain on the floor. In this aspect of the case, the plaintiff has wholly failed to meet and carry the burden the law placed upon him, and hence the affirmative charge was due the defendant, and in its refusal the court committed reversible error. Ensley Holding Co. v. Kelley, supra, on rehearing, and cases there cited.

Having reached this conclusion, it is unnecessary to consider the question presented by defendant's motion for new trial.

It follows, therefore, that the judgment of the circuit court must be reversed and the cause remanded. So ordered.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.