MOORE, Judge.
Mary Tucker appeals from a judgment of the Mobile Circuit Court (“the trial court”) entered in favor of Wal-Mart Stores, Inc., on her claim of negligence resulting from a slip and fall that occurred in Wal-Mart’s Tillman’s Corner store.

Facts

On January 4, 2009, Tucker and her mother-in-law visited the Wal-Mart at Tillman’s Corner in Mobile to purchase groceries. According to Tucker, she had returned to the over-the-counter pharmacy department to retrieve a different product for her mother-in-law when, at approximately 1:00 p.m., she fell. Tucker stated that, at the time she fell, she did not know what had caused her to fall. Tucker testified that a female Wal-Mart employee approached her and pointed out that she had slipped on some grapes. Tucker testified that the floor was dirty from where she had slid and mashed the grapes, which, she stated, looked dirty and old. Tucker testified that she had passed through the aisle where she fell on four different occasions during her visit before she fell and that she had not seen grapes on the floor on any of those occasions.
Don Wiggins, the store’s manager, testified that, at the time Tucker fell, Wal-Mart had in effect a “safety sweep” policy, the purpose of which was to make sure that there were no hazards on the floor and to make sure that the counters were clean and neat so that customers could find what they were looking for. Wiggins testified that the policy entailed Wal-Mart personnel making a radio announcement ev *797 ery three hours calling for a safety sweep, at which time Wal-Mart employees would do a safety sweep, which included looking in their areas for any debris on the floor and making sure that there was nothing on the counters that was falling off or that needed to be straightened or “zoned,” and a maintenance employee starting at one end of the store, going through the store with a large broom to help keep debris off the floor and to keep the floors clean from dirt and dust. Wiggins also stated that Wal-Mart’s safety-sweep policy also included all employees in the store continuously conducting a safety sweep at all times as they were moving throughout the store.
After viewing a surveillance video of the area around the over-the-counter pharmacy, which lasted from 11:53 a.m. until 1:53 p.m. on the date of Tucker’s slip and fall, Wiggins identified one employee in the area as “Cindy”; Wiggins testified that “Cindy” did not appear to be doing a safety sweep in the video but, rather, appeared to be in line for a prescription while on her break. Wiggins also identified another employee, Maria Padilla, in the video and testified that it appeared that she was leaving the department and was looking down as she walked; thus, he concluded, it appeared that Padilla was conducting a safety sweep. Wiggins testified that another employee in the surveillance video appeared to be stocking counters and not conducting a safety sweep. Wiggins also identified two more employees in the video, one of which he stated appeared to be observing the floor as she walked through the area and the other of which he stated appeared to be looking at the counters and floors as she walked. Wiggins testified that if an employee was walking throughout the store and not conducting a safety sweep, then that employee would be in breach of Wal-Mart’s policy.
Wiggins testified that the over-the-counter pharmacy is on the other side of the store from where the grapes are kept. He stated that he had viewed the entire surveillance video and that he had not seen grapes on the floor or dropped onto the floor. Wiggins testified that Wal-Mart did not know when the grapes fell to the floor.
Maria Padilla testified that she was the only employee working in the over-the-counter pharmacy on the date of Tucker’s fall but that she had been at lunch at the time of the fall and had not known that the fall had occurred until she returned from lunch. Padilla testified at trial that, in the video, she was walking toward the back of the department and could have been conducting a safety sweep; she testified in her deposition, however, that she was not conducting a safety sweep at that moment in the video. Padilla testified that there had never been a time when she was working in the over-the-counter pharmacy department when three hours would have passed without her conducting a safety sweep. She testified that if she sees something on the floor, she picks it up and cleans it or, if it is a major spill, she guards it until she can contact maintenance to clean it. Padilla testified that she had not seen anything on the floor throughout the day on January 4, 2009, that she could remember.

Procedural History

Tucker filed in the trial court a complaint against Wal-Mart on January 25, 2010, alleging claims of negligence and wantonness. Wal-Mart filed an answer on February 26, 2010. A jury trial was held on February 14 and February 15, 2011. The trial court dismissed Tucker’s wantonness claim at the close of Tucker’s case, submitting only Tucker’s claim of negligence to the jury.
At the close of the evidence, the trial court conducted a “charge conference” out *798 side the presence of the jury. At that conference, Tucker requested that the trial court give the jury “Plaintiffs Jury Charge Number 8,” which read:
“Under Alabama law, a store is ‘under a duty to exercise reasonable care to provide and maintain reasonably safe premises’ for the use of its customers. ‘A store is not an insurer of a customer’s safety and is liable only if it negligently fails to keep the premises in a reasonably safe condition.’ In the context of this case, a plaintiff must prove one of three things: (1) that the defendant had actual notice that the grape or grapes were on the floor; (2) that the grape or grapes had been on the floor for a sufficiently long period of time so that the store had constructive notice of the hazard; or (3) that the store was otherwise delinquent in failing to discover and remove the defective condition.”
(Citations omitted.) Tucker also requested that the trial court give the jury “Plaintiffs Jury Charge Number 6,” which stated, in pertinent part:[1]
“2. A store is delinquent in not discovering the substance if its procedure ‘was inadequate or that it was performed inadequately on the day of plaintiffs fall.’ Hale v. Kroger Limited Partnership I, 28 So.3d 772, 783 (Ala.Civ.App.2009).”
Wal-Mart requested that the trial court give the jury “Defendant’s Requested Jury Charge Number 24,” which stated:
“Storekeepers have a duty to exercise reasonable care in providing and maintaining reasonably safe premises for the use of their customers. The store is not an insurer of the customer’s safety but is liable for injury only in the event it negligently fails to use reasonable care in the maintaining the premises in a reasonably safe condition. The burden rests upon [Tucker] to reasonably satisfy you from the evidence that the injury was proximately caused by the negligence of the store or one of its employees. Actual or constructive notice of the presence of the offending substance or condition must be proven before the store can be held responsible for the injury.”
In charging the jury, the trial court stated, in pertinent part:
“In the context of this case, [Tucker] must prove one of three things. One, that [Wal-Mart] had actual notice of the grape or grapes that were on the floor. Two, that the grape or grapes had been on the floor for a sufficiently long period of time so that the store had constructive notice of the hazard; or three, that the store was otherwise delinquent in failing to discover and remove the defective condition.
“The burden rests upon [Tucker] to reasonably satisfy you from the evidence that the injury was caused by the negligence of the store or one of its employees. Actual or constructive notice of the presence of the offending substance or condition must be proven before a store can be held responsible for the injury but [it] is not always necessary for the plaintiff to offer direct evidence as to the length of time a foreign object or substance has remained on the floor. It is permissible to infer the length of time an object or substance has remained on *799 the floor from the nature and condition of the foreign object or substance.”
The trial court refused to give “Plaintiffs Jury Charge Number 6,” over Tucker’s objection. After the jury was released to begin its deliberations, the jury returned to the courtroom and “asked to be instructed on the law pertaining to a shopkeeper’s duty and liability.” The trial court then repeated the instructions quoted above, again over Tucker’s objection.
The jury subsequently returned a verdict in favor of Wal-Mart, and the trial court entered a judgment on that verdict. Tucker filed a motion for a new trial on March 3, 2011. The trial court entered an order denying Tucker’s motion for a new trial on March 3, 2011. Tucker filed her notice of appeal to this court on April 13, 2011.

Discussion

Tucker argues on appeal that the trial court erred in its jury instructions on the issue of a storekeeper’s duty. Specifically, she argues that the trial court gave confusing and misleading jury instructions on a storekeeper’s duty by first giving an instruction similar to “Plaintiffs Jury Charge Number 8,” which included three prongs of liability, and then giving an instruction similar to “Defendant’s Requested Jury Charge Number 24,” which included only the first two prongs and indicated that Tucker was required to prove either actual or constructive notice for liability to ensue. Tucker also argues that the trial court erred by failing to give part two of “Plaintiffs Jury Charge Number 6,” which, she maintains, “was essential for the jury to understand the third prong of liability of a storekeeper’s duty,” as referenced in “Plaintiffs Jury Charge Number 8.”
“ ‘A trial court has broad discretion in formulating its jury instructions, provided those instructions accurately reflect the law and the facts of the case.’ Pressley v. State, 770 So.2d 115, 139 (Ala.Crim.App.1999). Thus, ‘generally speaking, the standard of review for jury instructions is abuse of discretion.’ Pollock v. CCC Invs. I, LLC, 933 So.2d 572, 574 (Fla.Dist.Ct.App.2006).”
Arthur v. Bolen, 41 So.3d 745, 749 (Ala.2010).
“ ‘ “In a jury case, a party is entitled to have its case tried to a jury that is given the appropriate standard by which to reach its decision, and a wrongful refusal of a requested jury charge constitutes a ground for a new trial. See, C.I.T. Financial Services, Inc. v. Bowler, 537 So.2d 4 (Ala.1988). An incorrect, misleading, erroneous, or prejudicial charge may form the basis for granting a new trial. See, Nunn v. Whitworth, 545 So.2d 766 (Ala.1989). However, the refusal of a requested, written instruction, although a correct statement of the law, is not cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the trial court’s oral charge. See, Rule 51, Ala. R. Civ. P. When examining a charge asserted to be erroneous, this Court looks to the entirety of the charge to see if there is reversible error. See, Grayco Resources, Inc. v. Poole, 500 So.2d 1030 (Ala.1986).” ’
“Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319, 327 (Ala.2000) (quoting Shoals Ford, Inc. v. Clardy, 588 So.2d 879, 883 (Ala.1991)). Additionally, ‘[a]ny error or defect which does not affect the substantial rights of the parties may be disregarded.’ Bishop v. State Auto. Mut. Ins. Co., 600 So.2d 262, 265 (Ala.Civ.App.1991) (citing Rule 61, Ala. R. Civ.App.). As a result, the jury instruction must be erroneous as well as preju *800 dicial, and this Court cannot presume prejudice. Brabner v. Canton, 611 So.2d 1016, 1018 (Ala.1992). Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165, 167 (Ala.1991). The appellant has the burden of demonstrating that an erroneous jury instruction was prejudicial. See Ryan, 589 So.2d at 167 (citing Dinmark v. Farrier, 510 So.2d 819 (Ala.1987)).”
Southeast Envtl. Infrastructures, L.L.C. v. Rivers, 12 So.3d 82, 43-44 (Ala.2008).
In S.H. Kress & Co. v. Thompson, 267 Ala. 566, 103 So.2d 171 (1957), a slip-and-fall case involving a storekeeper and a customer, our supreme court stated:
“[T]o prove negligence on the part of the defendant it is necessary to prove that the foreign substance was on the floor a sufficient length of time to impute constructive notice to the defendant, or that he had actual notice, or that he was delinquent in not discovering and removing it.”
267 Ala. at 569, 103 So.2d at 174. In Winn-Dixie Store No. 1501 v. Brown, 394 So.2d 49 (Ala.Civ.App.1981), this court summarized the holding in Thompson as follows:
“As the burden of showing negligence rests with the plaintiff, it is necessary to prove: (a) that the foreign substance slipped upon was on the floor a sufficient length of time to impute constructive notice to the defendant, or (b) that the defendant had actual notice of the substance’s presence on the floor, or (c) that the defendant was delinquent in not discovering and removing the foreign substance. In the absence of such proof, the plaintiff has not made out a prima facie case that the defendant was negligent in the maintenance of its floors.”
394 So.2d at 50. Numerous cases have since quoted or cited this summary of the law from Brown. See, e.g., Owens v. Food World, Inc., 668 So.2d 841, 842 (Ala.Civ.App.1995); Cox v. Western Supermarkets, Inc., 557 So.2d 831, 832 (Ala.1989); and Western Supermarkets, Inc. v. Keith, 528 So.2d 317, 320 (Ala.1988).
In discussing the delinquent-inspection theory, this court stated in Brown:
“[The plaintiff] offered no evidence from which it might reasonably be inferred that the store was delinquent in not discovering and removing the offending substance. (No evidence was produced as to any failure to sweep, clean or observe the floors at regular intervals. See, Delchamps, Inc. v. Stewart, [47 Ala.App. 406, 255 So.2d 586 (Civ.App.1971)].)”
394 So.2d at 50. More recently, in Hale v. Kroger Limited Partnership I, 28 So.3d 772 (Ala.Civ.App.2009), this court affirmed a summary judgment in favor of a storekeeper in a slip-and-fall case. After quoting Brown, 28 So.3d at 779, this court divided its analysis into three sections, one labeled “Constructive Knowledge,” 28 So.3d at 779, one labeled “Actual Knowledge,” 28 So.3d at 782, and one labeled “Delinquent Inspection,” 28 So.3d at 783. In the last section, this court stated:
“Hale has not presented any evidence to indicate that Kroger’s sweep/spot mop inspection procedure was inadequate or that it was performed inadequately on the day of his fall. Without such evidence, he has failed to present a genuine issue of material fact regarding Kroger’s alleged delinquency in failing to discover and remove the baby-food spill.”
28 So.3d at 783.
Tucker reads Broum and Hale as establishing that the negligence of a storekeeper may be proven solely by evidence indicating that the storekeeper failed to establish an adequate inspection procedure or by evidence indicating that the *801 employees of the storekeeper failed to perform an adequate inspection of the premises in accordance with the policies of the storekeeper. That is not a correct interpretation of the holdings of those cases. In both cases, this court noted that the appellant had failed to produce any evidence of an inadequate inspection procedure or an inadequate performance of an inspection procedure, which, obviously, would defeat any claim of delinquent inspection, but in neither case did the court hold that proof of an inadequate inspection procedure or of inadequate performance of an inspection procedure, alone, would have defeated the motion for a summary judgment.
In Thompson, the storekeeper maintained a porter to continuously inspect and sweep its floors. 267 Ala. at 570, 103 So.2d at 174. The supreme court’s decision indicates that the supervisors and other employees also continuously inspected the floors. 267 Ala. at 570, 103 So.2d at 175. A customer was injured when she slipped and fell on what the storekeeper described as “ ‘spit-out candy ” in one of the main aisles of the store. 267 Ala. at 568, 103 So.2d at 173. The customer argued that the storekeeper was obviously negligent because “a proper inspection of the floor was bound to reveal the existence of the foreign substance.” 267 Ala. at 570, 103 So.2d at 174. The supreme court rejected that theory, stating:
“In order to prove that there was a negligent inspection, it is still incumbent upon [the customer] to prove, or to offer evidence from which it can reasonably be said, that the foreign substance was on the floor at the time of the inspection.”
267 Ala. at 570, 103 So.2d at 175.
The law has not changed since Thompson was decided, and it remains that a customer asserting delinquent inspection on the part of a storekeeper must still prove that the foreign substance was on the floor for a sufficient period such that an adequate inspection would have discovered it. Nothing in Brown or Hale alters that rule of law.
The trial court did not err in failing to give “Plaintiffs Jury Charge Number 6” because it incorrectly summarized the law as to delinquent inspection. The trial court also did not err in charging the jury that it could find for Tucker if it determined that Wal-Mart was “delinquent in failing to discover and remove the defective condition” and in charging the jury that the burden remained on Tucker to prove “actual or constructive notice of the offending substance or condition.” That jury instruction, coupled with a proper explanation of constructive notice, accurately encapsulated the holding in Thompson.
Because Tucker has failed to present any arguments on appeal that merit reversal, the trial court’s judgment is affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. The first part of “Plaintiff’s Jury Charge Number 6” stated:
“1. To establish the negligence of Wal-Mart in the present case, [Tucker] must prove that Wal-Mart ‘was delinquent in not discovering and removing the substance.’ Brooks v. Winn-Dixie of Montgomery, Inc., 716 So.2d 1203, 1207 (Ala.Civ.App.1997).”
(Some citations omitted.) That portion of the charge was included as the third prong of "Plaintiff's Jury Charge Number 8" and is not at issue on appeal.